UNITED STATES DISTRICT COURT
EASTER DISTRICT OF LOUISIANA

ANDREA HAMILTON                                    CIVIL ACTION

VERSUS                                             NUMBER: 09-3356

THE MOSAIC COMPANY                                 SECTION: "B"(2)

## ORDER AND REASONS

Before the Court is Defendant The Mosaic Company's ("Mosaic") Motion to Dismiss, (Rec. Doc. 3), and Plaintiff's Opposition. (Rec. Doc. 17). Also before the Court is Plaintiff's Motion to Remand (Rec. Doc. 4), and Defendant's Opposition. (Rec. Doc. 14). For the following reasons, plaintiff's motion to remand is **DENIED** without prejudice to reurge and defendant's motion to dismiss is **DENIED**.

On October 13, 2008, Plaintiff Andrea Hamilton filed his Petition for Damages against The Mosaic Company ("Mosaic") in the 23rd Judicial District Court for the Parish of St. James, State of Louisiana. (Rec. Doc. 3-2). Plaintiff alleges that on April 8, 2008, he was injured in the acid loading area of the plant site of Mosaic. (Rec. Doc. 3-2). He claims that Doyle Hoover, an alleged employee of Mosaic, directed Hamilton to place a tubular arm device, which transports acid, to the truck driven by Hamilton. (Rec. Doc. 3-2 ¶ 2). He claims that the device was not counter weighted, as it had been on all other occasions in which Hamilton was involved in loading acid at Mosaic's plant, and as a result its weight was so heavy that Hoover dropped the device, thus shifting

all of the weight to Hamilton, causing him serious bodily harm. (Rec. Doc. 3-2 ¶ 4-5).

Plaintiff further contends that neither Mosaic, Hoover, nor any other employee or representative of Mosaic warned Hamilton that the device was improperly installed, not properly counter weighed, and was dangerous to use. (Rec. Doc. 3-2 ¶ 6). Furthermore, Plaintiff alleges Hoover did not warn him that he was going to drop the device and no longer assist Hamilton in guiding it to the truck and as a result Hamilton suffered injuries to his back, legs, knees, arms and feet which he claims disabled him permanently. (Rec. Doc. 3-2 ¶ 7-8). Plaintiff seeks damages for loss of enjoyment of life, pain and suffering, injuries to his body, embarrassment and humiliation, loss of wages, disability, medical expenses, and other damages. (Rec. Doc. 3-2 ¶ 9).

On April 24, 2009, Defendant filed its Notice of Removal, pursuant to 28 U.S.C. §§ 1441 and 1446, based on diversity jurisdiction, pursuant to 28 U.S.C. § 1332, since Plaintiff is a citizen of Louisiana and Defendant is a citizen of Delaware and Minnesota and because Defendant asserts that the amount in controversy exceeds $75,000. (Rec. Doc. 1). In its Notice of Removal, Defendant reserves "any and all defenses . . . including, but not limited, to insufficiency of process, insufficiency of service of process, and lack of personal jurisdiction." (Rec. Doc. 1 ¶ 10).

Subsequently Defendant filed its Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(4) and 12(b)(5), claiming that the Court lacks personal jurisdiction over Mosaic, and alternatively that process and service of process was insufficient and that this Court should issue an order requiring Plaintiff to cure the defective service within a reasonable period of time or suffer dismissal of his claims. (Rec. Doc. 3). Defendant claims that it does not have sufficient contacts with Louisiana to be exposed to suit in the state, because the plant in which Plaintiff was injured belongs to Mosaic Fertilizer, L.L.C. ("Mosaic Fertilizer"), a subsidiary of Mosaic. It claims that Mosaic Fertilizer is a distinct corporate entity. (Rec. Doc. 3-8).

On May 11, 2009, Plaintiff filed a Motion to Remand this case back to the Twenty Third Judicial District Court, Parish of St. James, State of Louisiana, pursuant to 28 U.S.C. § 1447, asserting that the amount in controversy does not exceed $75,000. (Rec. Doc. 4). Plaintiff attached an affidavit to its Motion to Remand, signed by Plaintiff's counsel, which states that Plaintiff's counsel is well acquainted with the damages suffered by Plaintiff; that the value of his damages does not exceed $75,000, that Plaintiff will not seek a judgment against Mosaic in excess of that sum; and that, to his knowledge, there are no facts that should change the amount in controversy to exceed the sum of $75,000. (Rec. Doc. 4-3 at 5).

A. Remand

To determine if jurisdiction is proper for removal, the Fifth Circuit has held that courts must consider the state petition as it existed at the time of removal. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). Pursuant to Louisiana Code of Civil procedure Article 893, plaintiffs in Louisiana state courts may not specify the numerical value of damages claimed in a Petition. Courts generally determine whether the amount in controversy requirements have been satisfied by looking to the amount of compensatory damages that have been recovered in analogous cases. *See Marcel v. Pool Co.*, 5 F.3d 81, 82-83.

The burden is on the removing defendant to demonstrate that federal jurisdiction exists. *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993), *cert denied*, 510 U.S. 868 (1993). Nonetheless, the court in *De Aguilar* held that a plaintiff cannot avoid removal by alleging that damages do not exceed the requisite amount in controversy, if the removing defendant satisfies its burden of showing that the amount in controversy does exceed the threshold amount. 47 F.3d at 1413. However, in *Midkiff v. Hershey Cholcolate U.S.A.*, where the plaintiff signed a binding stipulation that stated that the plaintiff would not accept damages in excess of $75,000, the case was ordered remanded. 1 F. Supp. 2d at 593.

Plaintiff seeks damages for: (1) loss of enjoyment of life; (2) pain and suffering; (3) injuries to his knees, arms, legs, feet and to his body generally including strains, tears, bruising and

-4-

general injury to his body; (4) embarrassment and humiliation; (5) loss of wages; (6) disability; (7) medical expenses; and (8) "other damages that will be shown at trial." (Rec. Doc. 3-2 ¶ 9). In *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880 (5th Cir. 2000), where the plaintiff was injured in a slip and fall accident, the court held that it was facially apparent that the plaintiffs claimed damages exceeded $75,000, where she sustained injuries to her wrist, knee, patella, upper and lower back, and sought damages for medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages and earning capacity, and permanent disability and disfigurement. *Id.* at 886-84.

Furthermore, there have been several other analogous cases in which courts awarded damages in excess of $75,000. *See Piazza v. Behrman*, 601 So.2d 1378 (La. 1992); *Campbell v. Webster Parish Police Jury*, 828 So.2d 170 (La. App. 2 Cir. 2002); *Beoh v. Watkins*, 646 So.2d 513 (La. App. 4 Cir. 1994); *Wallmouth v. Rapides School Bd.*, 802 So.2d 28 (La. App. 3 Cir. 2001); *Reeves v. Structural Preservation Systems*, 716 So.2d 58 (La. App. 3 Cir. 1998); *Boyle v. Board of Supr's of Louisiana State University and Agr. & Mechanical College*, 672 So.2d 254 (La. App. 1 Cir. 1996); *Newman v. Ellis*, 572 So.2d 170 (La. App. 1 Cir. 1990); *Rispone v. Louisiana State University and Agr. and Mechanical College*, 637 So.2d 731 (La. App. 1 Cir. 1994). While damage awards are fact-specific, it is apparent

that Plaintiff seeks damages for serious injury, and he alleges that he was permanently disabled as a result of the accident in question. (Rec. Doc. 3-2 ¶ 8). Thus, it is facially apparent that the amount in controversy in this matter exceeds $75,000.

As such, the burden has shifted to Plaintiff to show to a legal certainty that the amount in controversy does not exceed $75,000. *De Aguilar v. Boeing Company*, 47 F.3d 1404, 1412 (5th Cir. 1995). Plaintiffs can meet this burden by filing a binding stipulation or affidavit with their complaints. *Id.* Post-removal affidavits or stipulations may be considered in support of a remand under limited circumstances where the amount in controversy is ambiguous at the time of removal. *Gebbia*, 233 F.3d at 883. "[I]f it is facially apparent from the petition that the amount in controversy exceeds $75,000 at the time of removal, post-removal affidavits, stipulations, and amendments reducing the amount do not deprive the district court of jurisdiction." *Id.* (citing *St. Paul Mercury Indem.*, 303 U.S. 283, 292 (1938)).

Defendant has met its burden of proving that the amount in controversy exceeds $75,000 by providing this Court with case law having similar facts to Plaintiff's claims in which those plaintiffs recovered over $75,000 in damages. (Rec. Doc. 14). Defendant cannot avoid removal by claiming, after removal, that the amount in controversy does not exceed $75,000. Furthermore, Plaintiff's counsel's affidavit would not be binding on Plaintiff,

and does not state that Plaintiff will not accept damages in excess of $75,000. (Rec. Doc. 4-3 at 5). A binding stipulation would contain language that Plaintiff will not accept damages in excess of $75,000, and that the affidavit is also binding on Plaintiff's representatives, assigns, and heirs, and would be signed by Plaintiff and Plaintiff's counsel. The affidavit here does not contain such language, and Defendant met its burden of proving that the amount in controversy exceeds $75,000. Accordingly,

Plaintiff's Motion to Remand be **DENIED** without prejudice to reurge within 10 days upon satisfaction of above-noted condition.

B. Personal Jurisdiction

The Louisiana Long-Arm Statute grants courts the power to exert personal jurisdiction over nonresidents. *See* La. R.S. 13:3201. The statute provides that a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States. *Id*.

Thus, the exercise of jurisdiction must comport with due process, which requires the nonresident to have minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Whether or not a nonresident has sufficient minimum contacts depends on whether he has purposefully availed himself of the

privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). The nonresident defendant's contacts with the forum state must be such that the defendant should have reasonably anticipated being haled into court there. *Id*. at 297. Accordingly, where the defendant has deliberately engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he has effectively availed himself of the privilege of conducting business there. *Id*. In that case, because the defendant's activities would be shielded by the benefits and protections of the forum's laws it would not be unreasonable to require him to submit to the burdens of litigation in that forum as well.

Additionally, to determine whether the exercise of personal jurisdiction would offend the notions of fair play and substantial justice, several factors must be considered: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* at 292.

Mosaic contends that "the exercise of personal jurisdiction over it by this Court would violate due process because Mosaic has no minimum contacts with the State of Louisiana." It claims that, while it owns sixty percent (60%) of the shares of Mosaic Fertilizer, that ownership alone is insufficient to satisfy due process requirements for exercise of personal jurisdiction, since it claims that Mosaic Fertilizer and Mosaic are "separate and distinct entities with different owners, stockholders, officers and directors who act independently in the interest of each corporation." (Rec. Doc. 3-8). It reminds the court that under Louisiana law, a parent corporation is not subject to jurisdiction within a state simly because one of its subsidiaries is present or doing business in the state. (Rec. Doc. 3-8)(citing *Jasper v. Nat'l Medical Enterprises, Inc.*, 657 So.2d 604 (La. App. 1 Cir. 1995)). Mosaic explained that "[e]ssentially, the court must determine whether the subsidiary is actually nothing more than the 'alter ego' of the parent corporation." (Rec. Doc. 3-8).

By operating the Uncle Sam Louisiana plant in which Plaintiff was injured and plants in Faustina, Louisiana, Mosaic has sufficient minimum contacts which satisfy the due process requirements of both federal and state statutory and constitutional law. At Mosaic's Uncle Sam Plant, which legally belongs to Mosaic Fertilizer, the only sign denoting the owner/operator of the plant at which Plaintiff was injured depicts Mosaic's registered

trademark. (Rec. Docs. 17, 17-3 at 1). Furthermore the only printed literature which is accessible to the public at the Uncle Sam plant office is a publication of Mosaic, which depicts Mosaic's corporate logo. (Rec. Doc. 17-3 at 4). Mosaic also issued press releases concerning the operations of the Uncle Sam plant facility claiming the plant to be its own, never mentioning Mosaic Fertilizer. (Rec. Doc. 17-3 at 6-7). Mosaic has recently sought employment applications to be sent to it as "The Mosaic Company" for its plant in Uncle Sam, Louisiana. (Rec. Doc. 17-3 at 8). Mosaic, in its own website, holds itself out to the public as the owner/operator of the Uncle Sam plant, and in attempting to access the Mosaic Fertilizer, LLC website merely directs internet users to Mosaic's website. (Rec. Doc 17-3 at 8-17). Mosaic's annual report also refers to "**our** Uncle Sam and Faustina, Louisiana facilities." (Rec. Doc. 17-3 at 24)(emphasis added).

As such, it is clear that Mosaic "holds itself out to the public as the owner and operator of the plant at which [P]laintiff was injured in Uncle Sam Louisiana and operates other plant facilities in Louisiana and has significantly commingled its operations with Mosaic Fertilizer to the point that it appears that Mosaic Fertilizer is treated simply as if it did not separately exist." (Rec. Doc. 17). The exercise of personal jurisdiction over Mosaic does not offend traditional notions of fair play and substantial justice. Mosaic has purposefully availed itself of the

privilege of conducting activities in Louisiana, thus invoking the benefits and protections of its laws.

Furthermore, with respect to the factors articulated in *Volkswagen* to determine whether or not the exercise of jurisdiction over Mosaic is fair or reasonable: (1) the burden on Mosaic in defending against a suit in Louisiana is not significant for a company with a plant in the state; (2) Louisiana has a significant interest protecting its citizens from injury within the state; (3) Plaintiff has a significant interest in obtaining convenient and effective relief in his home state; (4) the interstate judicial system has an interest in obtaining the most efficient resolution of the controversy in Louisiana, where the injuries occurred and where witnesses reside; and (5) the shared interest of the several states in furthering fundamental substantive social policies weighs in favor of adjudication in Louisiana. *See Volkswagen*, 444 U.S. at 292. Accordingly, Defendant's 12(b)(2) motion to dismiss for lack of personal jurisdiction is **DENIED**.

### C. Process and Service of Process

Mosaic claims that process and service of process were insufficient. (Rec. Doc. 3-8). It claims that Plaintiff attempted to serve Mosaic at 7250 Louisiana Highway 44, Convent, Louisiana, and that Mosaic does not regularly conduct business in this location. (Rec. Doc. 3-8). It further claims that it has not filed a report with the Louisiana Secretary of State, and thus it has no

officers or directors within the state upon whom service can be effected. (Rec. Doc. 3-8). Furthermore, Mosaic claims that Plaintiff attempted to effect service on it through the Louisiana Secretary of State, rather than following the procedures set forth in the Louisiana long-arm statute. (Rec. Doc. 3-8).

Plaintiff contends service on Mosaic was attempted personally on an employee of Defendant by the St. James Sheriff's Department, who also unsuccessfully attempted to serve another corporation per that employee's advice. (Rec. Doc. 17). Plaintiff asserts that Mosaic was properly served under La.C.C.Pr. art. 1261, which provides that after due diligence service cannot be made on a corporation, the Secretary of State becomes the proper person to be served for the defendant. (Rec. Doc. 17).

The Court finds that process was not actually served under La.C.C.Pr. art. 1261, but rather under La.C.C.Pr. art. 1262, which provides:

> If the officer making service certifies that he is unable, after diligent effort, to have service made as provided in Article 1261, then the service may be made personally on the secretary of state, or on a person in his office designated to receive service of process on corporations. The secretary of state shall forward this citation to the corporation at its last known address.

Accordingly, Defendant's 12(b)(4) and 12(b)(5) Motions are **DENIED.**

New Orleans, Louisiana, this 27th day of August, 2009.

_____
UNITED STATES DISTRICT JUDGE